UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **J.D. and M.D., minor children, by and through their parent and next friend, KIM DE GIOVANNI,** | **CIVIL ACTION NO. 5:14-409-KKC** |
| **Plaintiffs,** | |
| **V.** | **MEMORANDUM OPINION AND ORDER** |
| **DENNIS RILEY and SHELTER MUTUAL INSURANCE COMPANY,** | |
| **Defendants.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiffs' motion to remand. (DE 3). The plaintiffs, Kentucky residents, brought this action in Mercer Circuit Court alleging that Shelter Mutual Insurance Company ("Shelter"), a Missouri corporation, and claims adjustor Dennis Riley, a Kentucky resident, unlawfully settled claims with J.D. and M.D., minor children. The defendants assert that the plaintiffs fraudulently joined Riley simply to defeat diversity jurisdiction.

The Court will grant the plaintiffs' motion for the following reasons.

**I.**

On November 13, 2009, seventeen-year-old Lyssa De Giovanni was driving the family pickup truck on Jackson Pike. Jackson Pike is a winding, unmarked roadway. (4-2 Riley Notes, at 3.) The roadway is wide enough for two trucks to pass one another; however, both trucks must move to the edges of the road to pass. (4-2 Riley Notes, at 1, 3.) Sixteen-

year-old Andrew Rechis sat in the front seat, and Lyssa's brothers, J.D. and M.D., sat in the back seat. (4-2 Riley Notes, at 1.) No one was wearing a seat belt. (4-2 Riley Notes, at 3.)

Lyssa was startled when their truck and another truck simultaneously crested a hill. (4-2 Riley Notes, at 3.) She moved to the right side of the road and avoided the oncoming vehicle, but the truck swerved, collided with a tree, and rolled over on the driver's side. (3-5 Police Report, at 2.) All four occupants were ejected from the vehicle. (3-5 Police Report, at 2.) Andrew was flown to UK Hospital in an air ambulance, and J.D. and M.D. were driven to Haggin Hospital in an ambulance. (3-5 Police Report, at 2.)

Shelter insured the family truck, and on November 16, 2009, Dennis Riley contacted the plaintiffs to discuss the accident and J.D.'s and M.D.'s injuries. (DE 4 Defs.' Resp. in Opp'n, at 2–3.) Riley continued to monitor J.D.'s and M.D.'s medical claims and, as of March 2, 2010, noted that Personal Injury Protection ("PIP") payments totaled $8,126.67 and $5,931.70 for J.D. and M.D. respectively. (DE 4-2 Riley Notes, at 8.) Riley also noted that the policy had Bodily Injury ("BI") reserves of $50,000 for Andrew, $25,000 for J.D., and $25,000 for M.D. (DE 4-2 Riley Notes, at 8.)

On April 2, 2010, Kim De Giovanni—J.D. and M.D.'s mother—asked Riley to proceed with the settlement of Andrew's claim. (DE 4-2 Riley Notes, at 9.) Kim did not, however, discuss J.D.'s or M.D.'s BI claim. Shelter authorized a $50,000 settlement of Andrew's BI claim and Riley noted that the settlement "requir[ed] court approval [because Andrew was a] minor." (DE 4-2 Riley Notes, at 10, 12.)

On May 5, 2010, Riley sent unsolicited offers to settle J.D.'s and M.D.'s BI claims. (DE 4-7 Cover Letters, at 1–2.) Riley offered to settle each BI claim for $5,000.00 and included an "Indemnifying Release (Minors)" ("Release") form with each child's settlement offer. (*See* DE 4-7 Cover Letters, at 1–2; DE 4-8 Releases, at 1–2.) Riley and the plaintiffs

2

discussed the proposed settlements throughout the following months, but Riley never told the plaintiffs that the settlements would require court approval despite continuously noting that Andrew's settlement was a "minor claim which requires court approval." (DE 4-2 Riley Notes, at 10–12.) Ultimately, the plaintiffs signed the Releases and settled J.D.'s and M.D.'s BI claims in August 2010. (DE 4-2 Riley Notes, at 11–12; DE 4-8 Releases, at 1–2.) Shelter, however, never sought court approval of these settlements.

Plaintiffs then filed this suit in Mercer Circuit Court. (DE 1-1 Compl.) They allege five causes of action solely against Shelter. Plaintiffs also allege the following causes of action against *both* Shelter and Riley: (1) negligence/gross negligence; (2) fraud in the inducement; (3) fraud by omission; (4) intentional infliction of emotional distress; and (5) negligent misrepresentation. (DE 1-1 Compl., at ¶¶ 55–88.) Specifically, the plaintiffs allege that Riley and Shelter acted with gross negligence in representing information concerning the Releases and J.D.'s and M.D.'s rights; that Riley and Shelter knowingly concealed information from the plaintiffs; that Riley and Shelter committed fraud to induce the plaintiffs to sign the Releases; and that Riley and Shelter violated duties created by Kentucky's Unfair Claims Settlement Practices Act, the Kentucky Consumer Protection Act, and KRS § 387.280. (DE 1-1 Compl., at ¶¶ 56, 58, 64, 73, 74, 85.) In particular, the plaintiffs assert that KRS § 387.280 creates a statutory obligation for a court to approve any proposed settlement in order to protect the interests of the minor children but that Riley neither informed the plaintiffs of this right nor sought court approval after the plaintiffs signed the settlement offers. (DE 1-1 Compl., at ¶ 56.)

The defendants filed a notice of removal in this Court based upon federal diversity jurisdiction. (DE 1 Notice of Removal, at 2.) They acknowledge that the plaintiffs and Defendant Riley are Kentucky citizens; however, the defendants assert that the Court

should ignore Riley's citizenship because the plaintiffs fraudulently joined him to this suit. (DE 1 Notice of Removal, at 2–3.) The defendants claim, *inter alia*, that the only standard of care applicable to insurance companies—and, relatedly, to their adjusters—is bad faith. (DE 4 Defs.' Resp. in Opp'n, at 9, 12.) The plaintiffs did not assert any bad faith claims against Riley; therefore, the defendants argue that "there is 'no colorable basis' for a claim" against Riley. (DE 1 Notice of Removal, at 2.) The defendants also assert that they have met their burden of proving a sufficient amount in controversy to satisfy diversity jurisdiction. (DE 4 Defs.' Resp. in Opp'n, at 15.)

The plaintiffs filed a motion to remand this action to Mercer Circuit Court. (DE 3). They contend that Kentucky law recognizes more than simply bad faith claims against insurance companies and their adjusters and, accordingly, assert that they have alleged colorable claims against Riley. (DE 3-1 Mem. in Supp., at 10.) The plaintiffs also argue that the defendants have not met their burden in demonstrating that the amount in controversy exceeds $75,000.00. (DE 3-1 Mem. in Supp., at 12.)

## II.

A civil action may be removed from state court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over actions where the amount in controversy exceeds $75,000.00 and the action is between citizens of different States. *Id.* § 1332(a). In removal, the defendant bears the burden of establishing the federal court's original jurisdiction, *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1063 (6th Cir. 2008), and, when an action is removed based upon diversity jurisdiction, complete diversity of citizenship between the plaintiffs and defendants must exist at the time of removal. *Bishop v. Wal-Mart Stores, Inc.*, 24 F. App'x 236, 237 (6th Cir. 2001). If complete

4

diversity of citizenship does not exist at the time of removal, the defendant must prove that the plaintiff fraudulently joined the non-diverse defendant. *Id.*

"Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009). In determining whether the non-removing party asserted a colorable claim against a non-diverse party, the court must resolve all disputed questions of facts and ambiguities in law in favor of the non-removing party and consider whether the law *might* impose liability on the non-diverse party. *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)); *see also* 16 James Wm. Moore, *Moore's Federal Practice* § 107.14[2][c] (3d ed. 2013) ("If a possibility of a valid claim exists against the in-state defendant, the case is properly cognizable only in state court if the citizenship of that defendant would bar diversity jurisdiction."). A non-diverse defendant is fraudulently joined to the action if it is *clear* that the plaintiff cannot recover from the non-diverse defendant. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–33 (6th Cir. 2012). "A defendant attempting to prove fraudulent joinder thus faces a particularly heavy burden." *Kent State Univ. Bd. of Trs.*, 512 F. App'x at 489.

### III.

The defendants argue that the non-diverse insurance agent was fraudulently joined to the action because—under Kentucky law—the agent can only be held liable for breaching the duty of good faith and fair dealing, and the plaintiffs did not state a claim alleging bad faith. (DE 4 Defs.' Resp. in Opp'n, at 12.) Kentucky law, however, does not support the defendants' position.

The defendants cite numerous Kentucky cases in support of the assertion that "[t]here is no liability [against an insurer] in the absence of bad faith." *Ga. Cas. Co. v. Mann*, 46 S.W.2d 777, 779 (Ky. Ct. App. 1932); *see also United Servs. Auto Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003); *Harvin v. U. S. Fid. & Guar. Co.*, 428 S.W.2d 213, 215 (Ky. Ct. App. 1968); *Harrod v. Meridian Mut. Ins. Co.*, 389 S.W.2d 74, 76 (Ky. Ct. App. 1964). But these authorities only hold that bad faith is the appropriate standard of care for the particular issues in each action. These authorities do *not* hold that bad faith is the standard of care in *every* possible action against an insurance company and their adjusters.

Rather, the Supreme Court of Kentucky has explicitly found that an insurer *may* be liable to an insured for negligence. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248–49 (Ky. 1992). In *Mullins*, the court recognized the implied duty to advise an insured when:

> (1) the insured pays the insurance agent consideration beyond a mere payment of the premium; (2) there is a course of dealing over an extended period of time which would put an objectively reasonable insurance agent on notice that his advice is being sought and relied on; or (3) the insured clearly makes a request for advice.

839 S.W.2d at 248 (internal citations omitted). *Mullins* also found that breaching this duty would constitute negligence. *See id.*, at 247–48. This duty may be breached by either the insurance company or the agent, *see id.*, at 248 (citing *Hardt v. Brink*, 192 F. Supp. 879, 880–82 (W.D. Wash. 1961) (finding an individual insurance agent liable to an insured for negligently failing to properly advise the insured after having assumed the duty)), and does apply a bad faith standard. *See Mullins*, 839 S.W.2d at 247–49.

Kentucky recognizes actions against insurance companies and their agents based upon negligence; therefore, it is clear that bad faith is not the *only* standard of care

6

applicable to the insurance industry. *Mullins*, 839 S.W.2d at 247–49; *see also Commonwealth Life Ins. Co. v. Elliott*, 423 S.W.2d 898, 900 (Ky. 1968) (noting that an insurance company may be liable for an insurance agent's misrepresentations and "overreaching"); *Abney v. Ky. Farm Bureau Mut. Ins. Co.*, No. 2009-CA-000600-MR, 2010 WL 668749, at *3 (Ky. Ct. App. Feb. 26, 2010) (affirming the trial court's order granting summary judgment for claims of fraud and misrepresentation against an insurance company and its adjuster for lack of evidence, not because the claims were barred); *Peoples' Cent. Transit Lines v. Myers*, 102 S.W.2d 21, 23 (Ky. Ct. App. 1937) (same)).

Here, the plaintiffs claim that Riley committed fraud and negligence. The plaintiffs assert that Riley misrepresented J.D.'s and M.D.'s rights, misrepresented the legal effect of the Release, concealed information from the plaintiffs, and fraudulently induced the plaintiffs to sign the Releases. (DE 1-1 Compl., at ¶¶ 56, 58, 64, 73, 74, 85.) The plaintiffs also assert that Riley committed fraud in knowingly violating KRS § 387.280—a law specifically designed to protect minors during settlement negotiations. (DE 1-1 Compl., at ¶¶ 13, 15, 56); *see also* (DE 4-2 Riley Notes, at 10–12) (explicitly noting that minor claims require court approval).

Construing all ambiguities in law in favor of the plaintiffs and considering whether the law *might* impose liability, the plaintiffs have asserted colorable claims against Riley. *See Kent State Univ. Bd. of Trs.*, 512 F. App'x at 489. Therefore, the defendants have not met their burden of proving that the plaintiffs fraudulently joined Riley. *See id.*

*** *** ***

Because the defendants have not met their burden of proving that the plaintiffs fraudulently joined Riley, the non-diverse defendant, the Court need not address the

7

plaintiffs' argument that the defendants failed to establish an amount in controversy in excess of $75,000.00.

Accordingly, **IT IS ORDERED** that the plaintiffs' motion to remand (DE 3) is **GRANTED**. This matter is **REMANDED** to the Mercer Circuit Court and **STRICKEN** from this Court's active docket.

Dated March 17, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY